**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

SEP 10 2021

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

CURTIS LEE ERVIN,

Petitioner-Appellant,

v.

RONALD DAVIS, Warden, California State
Prison at San Quentin,

Respondent-Appellee.

No.    16-99010

D.C. No. 5:00-cv-01228-LHK

MEMORANDUM[*]

Appeal from the United States District Court
for the Northern District of California
Lucy H. Koh, District Judge, Presiding

Argued and Submitted June 2, 2021
Seattle, Washington

Before:  GOULD, OWENS, and FORREST, Circuit Judges.

Curtis Ervin appeals from the denial of his 28 U.S.C. § 2254 habeas petition

seeking relief from his first-degree murder conviction and death sentence on four

grounds: (1) the prosecutor improperly granted a witness full immunity, which

gave the witness a "license to lie" during the trial, (2) racial animus tainted the jury

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

deliberations, (3) Ervin's counsel was prejudicially ineffective during sentencing, and (4) the prosecutor violated *Batson v. Kentucky*, 476 U.S. 79 (1986). As the parties are familiar with the facts, we do not recount them here. We have jurisdiction under 28 U.S.C. § 1291, and we affirm on the first three issues. We resolve the *Batson* issue in a concurrently filed opinion.

We review the district court's denial of a habeas petition de novo. *Stanley v. Schriro*, 598 F.3d 612, 617 (9th Cir. 2010). Because Ervin filed his habeas petition after 1996, the Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this case. *Hurles v. Ryan*, 752 F.3d 768, 777 (9th Cir. 2014). Under AEDPA, we can grant a habeas petition only if we conclude that the state court's determination "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established [f]ederal law," or "(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate court proceeding." 28 U.S.C. § 2254(d). This standard is highly deferential and requires that we give the state court the benefit of the doubt. *See Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam).

## 1. Immunity Grant

Ervin argues that the prosecutor violated his constitutional rights by issuing an overbroad grant of immunity to an uncharged co-conspirator, Armond Jack, who was then purportedly given a "license to lie" during Ervin's trial. The

2

California Supreme Court rejected this claim, concluding that the immunity agreement extended only to prior acts of perjury; that Ervin failed to object to or seek clarification of the scope of the immunity agreement; and that, regardless, Ervin failed to demonstrate prejudice in part because the jurors were fully aware of the immunity grant. *People v. Ervin*, 990 P.2d 506, 523–24 (Cal. 2000).

We see no error in the California Supreme Court's conclusion. Even if the immunity grant was overbroad and Ervin's claim is not procedurally defaulted, Ervin has not demonstrated that the allegedly perjured testimony had a "substantial and injurious" effect on the verdict resulting in "actual prejudice." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citations omitted); *see also Davis v. Ayala*, 576 U.S. 257, 268–70 (2015) ("[T]he *Brecht* standard 'subsumes' the requirements that § 2254(d) imposes when a federal habeas petitioner contests a state court's determination that a constitutional error was harmless . . . ." (citation omitted)).

Despite Ervin's contention that "[h]ad the jury known the truth, the case would have fallen apart," the jury here was informed of the immunity deal, including that "Jack would not be prosecuted for any perjury based upon any testimony given at this trial." As the California Supreme Court noted, the defense extensively cross-examined Jack and repeatedly emphasized that he could not be trusted because of his immunity for perjury. *Ervin*, 990 P.2d at 523. Moreover,

ample physical evidence supported Ervin's guilt independent of Jack's testimony. *See id.* at 514. Thus, the California Supreme Court's denial of Ervin's request for relief based on the immunity agreement was not objectively unreasonable.

## 2. Jury Deliberations

Ervin next contends that racial animus permeated jury deliberations. In 2005, the California Supreme Court summarily denied his claim. At the time, both federal and state law prohibited evidence of jury deliberations or a juror's thought processes. In 2017, the U.S. Supreme Court recognized an exception where it is clear a juror "relied on racial stereotypes or animus to convict a criminal defendant." *Peña-Rodriguez v. Colorado*, 137 S. Ct. 855, 869 (2017). Even assuming *Peña-Rodriguez* applies retroactively, however, Ervin has not demonstrated "overt racial bias that cast[s] serious doubt on the fairness and impartiality of the jury's deliberations and resulting verdict." *Id.*

Ervin relies largely on juror declarations and statements made to a defense investigator to demonstrate racial animus. Ervin contends that the declarations and statements show that "racial divide . . . infected the case," and he points to certain jurors' statements and evidence of a "devil's bargain"—in which the jury was originally divided along racial lines on whether to impose capital punishment on Ervin, who is black, or his co-defendant Robert McDonald, who was white—as proof. Ervin cannot show, however, that any alleged racial animus was a

4

"significant motivating factor" in any juror's vote to convict. *Id.* The record also indicates the jury decided each defendant's sentence based on his perceived moral culpability, and indeed, the same jury gave Ervin's other co-defendant, Arestes Robinson, who is black, a life sentence. *Ervin*, 990 P.2d at 514. Thus, Ervin's evidence of racial animus does not rise to the level required for habeas relief. *See Peña-Rodriguez*, 137 S. Ct. at 869 ("Not every offhand comment indicating racial bias or hostility will justify setting aside the no-impeachment bar to allow further judicial inquiry.").

### 3. Ineffective Assistance of Counsel ("IAC")

Ervin also argues that his counsel was prejudicially ineffective during the sentencing phase. To prevail on an IAC claim, Ervin must demonstrate his counsel's representation (1) "fell below an objective standard of reasonableness," and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). Under AEDPA, our review is "doubly" deferential, and we must not conflate "unreasonableness under *Strickland* with unreasonableness under § 2254(d)," but rather consider whether there is "any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

Ervin contends his trial counsel failed to conduct an adequate investigation

into his childhood and mental health, and that his counsel's failure to uncover and present such mitigating evidence prejudicially affected his sentence. Specifically, Ervin argues that a proper investigation would have revealed evidence that he suffered from toxic chemical exposure and childhood head trauma that damaged his brain and impaired his ability to appreciate the criminality of his conduct. Had these impairments been presented, Ervin contends there is a reasonable probability the jury would have given him a life sentence. The California Supreme Court summarily denied Ervin's claim.

Even if we assume Ervin can show his attorney's performance was deficient, he cannot demonstrate it was prejudicial. Given the evidence that Ervin was a key motivator in the murder-for-hire plot, and that the murder was the result of days of planning and preparation, we do not think there is a reasonable probability that, but for the presentation of above mitigating evidence, Ervin would have received a different sentence. *See Strickland*, 466 U.S. at 694; *see also Shinn v. Kayer*, 141 S. Ct. 517, 525 (2020) (per curiam) (noting that fair-minded jurists can disagree whether evidence of mental impairment is "overwhelming" in light of other evidence showing "control and intentionality," including that the defendant planned the murder, hid the body, and profited from the crime (citation omitted)). The fact that the jury gave Robinson a lesser sentence after hearing evidence of his mental impairment is also insufficient to "undermine confidence in [Ervin's

sentence]," *Strickland*, 466 U.S. at 694, as Ervin and Robinson had different backgrounds and played different roles in the murder. Thus, the California Supreme Court's denial of Ervin's IAC claim was not objectively unreasonable under § 2254(d).

**AFFIRMED.**