[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-14106

Non-Argument Calendar

_____

TROY CURRY-PENNAMON,

 Petitioner-Appellee-Cross Appellant,

*versus*

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,
FLORIDA ATTORNEY GENERAL,

 Respondents-Appellants-Cross Appellees.

_____

Appeals from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:18-cv-01528-HLA-PDB

_____

Before WILLIAM PRYOR, Chief Judge, GRANT and BRASHER, Circuit Judges.

PER CURIAM:

The key issue in this appeal is whether the district court erred when it granted Troy Curry-Pennamon, a Florida prisoner, a writ of habeas corpus. *See* 28 U.S.C. § 2254. The district court vacated Curry-Pennamon's conviction for attempted second-degree murder on the ground that his appellate counsel was ineffective for belatedly arguing on rehearing that a jury instruction was fundamental error. But the district court rejected Curry-Pennamon's claims that his trial counsel was ineffective. Because the state courts did not unreasonably apply clearly established federal law when they rejected Curry-Pennamon's postconviction challenges, we affirm the denial of relief on his claims of ineffective trial counsel, reverse the grant of relief on his claim of ineffective appellate counsel, and remand for the district court to reinstate his conviction.

## I. BACKGROUND

We divide the background into three parts. First, we describe Curry-Pennamon's trial and direct appeal. Second, we describe Curry-Pennamon's unsuccessful state postconviction challenges to trial counsel, *see* Fla. R. Crim. P. 3.850, and to appellate counsel, *see id.* 9.141(d). Third, we describe Curry-Pennamon's federal habeas corpus proceeding.

### A. Curry-Pennamon's Trial and Direct Appeal

In July 2013, a Florida court tried Curry-Pennamon on charges of attempted first-degree murder and of carrying a concealed weapon. Victim Jacquan Holloway and his coworkers at Walmart testified that Holloway became angry when his girlfriend and Curry-Pennamon, who were also Walmart employees, flirted on the job. Holloway testified that he argued with Curry-Pennamon inside Walmart and later in its parking lot, where Holloway threatened to "whip [Curry-Pennamon's] a★★" and punched Curry-Pennamon, who fell to the ground.

Curry-Pennamon testified that he armed himself with a gun he kept in his glove compartment after seeing Holloway walk into the parking lot. An outdoor surveillance video camera recorded Curry-Pennamon exit his vehicle and yell at Holloway. Holloway approached and then punched Curry-Pennamon, who fell to the ground and drew his gun. Curry-Pennamon testified that he stood up, chased, and shot at Holloway because it did not "register" that Holloway was running away. Curry-Pennamon testified that Holloway "could have" turned and harmed him.

After the state rested its case, and again at the end of all the evidence, defense counsel moved, without success, for a judgment of acquittal on both charges. Counsel argued that, as an employee at his place of business, Curry-Pennamon was not required to have a permit to carry a concealed weapon. *See* Fla. Stat. § 790.25(3)(n). The trial court ruled that Curry-Pennamon did not qualify for the exception because he wielded his gun outside of and not in defense of Walmart.

The trial court instructed jurors to consider all the circumstances in determining whether Curry-Pennamon's use of deadly force was justifiable. The trial court stated that "[a] person is justified in using deadly force if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another or the imminent commission of an aggravated assault upon—against himself or another." It instructed the jurors, "In deciding whether [Curry-Pennamon] was justified in the use of deadly force, . . . [to] judge him by the circumstances by which he was surrounded at the time the force was used" and that "[b]ased upon appearances, [he] must have actually believed the danger was real." The trial court also instructed the jury about the right to stand one's ground if faced with imminent injury:

> If the defendant was not engaged in an unlawful activity and was attacked in any — in any place where he had a right to be, he had no duty to retreat and he had the right to stand his ground and meet force with force, including deadly force, if he reasonably believed that it was necessary to do so to prevent death or great bodily harm to himself or another or to prevent the commission of a forcible felony.

Finally, the trial court instructed the jurors that "[c]arrying a concealed weapon constitutes unlawful activity."

The jury found Curry-Pennamon guilty of attempted second-degree murder, as a lesser-included offense of attempted first-degree murder, and of carrying a concealed weapon. The trial court sentenced Curry-Pennamon to 25 years of imprisonment for

attempted murder and to a concurrent term of five years of imprisonment for his firearm offense.

On direct appeal, appellate counsel succeeded in having Curry-Pennamon's firearm conviction reversed. *Curry-Pennamon v. State*, 159 So. 3d 158 (Fla. Dist. Ct. App. 2015). The First District Court of Appeals ruled that Curry-Pennamon had been entitled to a judgment of acquittal based on the place-of-business exception, Fla. Stat. § 790.25(3)(n). 159 So. 3d at 159–60. The appellate court summarily rejected Curry-Pennamon's two challenges to his attempted murder conviction. *Id.* at 159. Curry-Pennamon argued that the trial court gave conflicting jury instructions on the duty to retreat—instructing that he had to exhaust all means of escape before using deadly force and that he had no duty to retreat—which confused the jury and negated his only defense. Curry-Pennamon also argued that the trial court failed to instruct the jury that self-defense was a defense to attempted second-degree murder.

Appellate counsel petitioned for rehearing. Counsel argued, for the first time, that fundamental error occurred when the trial court instructed the jury that carrying a concealed gun was unlawful and that Curry-Pennamon had a duty to retreat when he carried the gun lawfully. The State responded that Curry-Pennamon could not raise an unpreserved issue on rehearing. The State also argued that the allegedly improper jury instructions did not amount to fundamental error because Curry-Pennamon could not have reasonably believed deadly force was necessary when he shot the victim as he ran away. The appellate court summarily denied the

petition. *Curry-Pennamon v. State*, No. 1D13-4327 (Fla. Dist. Ct. App. Mar. 25, 2015).

### B. Curry-Pennamon's Unsuccessful State Postconviction Filings

Curry-Pennamon moved for postconviction relief and argued that trial counsel was ineffective for failing to request two jury instructions. *See* Fla. R. Crim. P. 3.850. First, Curry-Pennamon argued that counsel should have requested a jury instruction on the place-of-business exception and objected to the instruction that carrying a concealed weapon was an unlawful activity because it negated his self-defense argument. Second, Curry-Pennamon argued that his counsel should have requested a special instruction that he could arm himself due to prior threats by Holloway. The State opposed the motion.

The state postconviction court denied Curry-Pennamon's motion. The court ruled that counsel was not required to request an instruction on an exception that the trial court twice ruled did not apply to the facts of the case. The court also ruled that counsel's failure to request a prior-threats instruction did not prejudice Curry-Pennamon because the jury was instructed to consider all circumstances to determine whether the use of deadly force was justifiable.

Next, Curry-Pennamon petitioned the First District Court of Appeal for postconviction relief based on ineffective assistance of appellate counsel. *See* Fla. R. Crim. P. 9.141(d). Curry-Pennamon argued that appellate counsel failed timely to challenge the faulty

20-14106                Opinion of the Court                7

jury instruction on carrying a concealed firearm. The appellate court summarily denied Curry-Pennamon's postconviction petition. *Curry-Pennamon v. State*, 197 So. 3d 45 (Fla. Dist. Ct. App. 2016).

### C. Federal Habeas Corpus Proceeding

Curry-Pennamon petitioned for a writ of habeas corpus on four grounds. 28 U.S.C. § 2254. First, Curry-Pennamon reasserted that trial counsel should have requested jury instructions on the place-of-business exception and on prior threats. Next, Curry-Pennamon argued, for the first time, that his trial counsel should have requested an instruction that he could stand his ground and use deadly force as "necessary to prevent imminent death or great bodily harm," *see* Fla. Stat. § 776.012(1), regardless of whether he was engaged in an unlawful activity. And Curry-Pennamon argued it did not matter the claim was procedurally defaulted because the failure of postconviction counsel "to raise the[] claim[] in his original Rule 3.850 motion" provided cause to excuse the default. *See Martinez v. Ryan*, 566 U.S. 1 (2012). Finally, Curry-Pennamon reasserted that appellate counsel earlier should have challenged the faulty instruction on carrying a concealed weapon.

The State opposed the petition. First, the State argued that trial counsel did not have to raise the place-of-business exception issue a third time. Second, the State argued that Curry-Pennamon lacked cause to excuse his procedural default because his argument for trial counsel to request an instruction on section 776.012 was not substantial. *See id.* Alternatively, the State argued that trial

counsel's inaction was harmless because Curry-Pennamon "was still accorded the protections of the Stand Your Ground law." Third, the State argued that appellate counsel exercised reasonable professional judgment by arguing that the jury instructions were confusing, internally conflicting, and negated Curry-Pennamon's theory of self-defense.

The district court rejected Curry-Pennamon's claims that trial counsel was ineffective, but it issued the writ on his claim involving appellate counsel. The district court reasoned that appellate counsel was deficient in waiting until rehearing to raise the strongest challenge to Curry-Pennamon's attempted second-degree murder conviction, which resulted in the motion being denied on procedural grounds instead of being entertained on the merits. And the district court reasoned that appellate counsel's error prejudiced Curry-Pennamon because the jury would not have convicted him without the erroneous instruction that "painted [him] as a non-law-abiding citizen who had a duty to retreat." The district court refused to defer to the decision of the state court because it did not cite *Strickland v. Washington*, 466 U.S. 668 (1984), and, in the alternative, for unreasonably applying *Strickland*.

Both the State and Curry-Pennamon appealed. We granted Curry-Pennamon a certificate of appealability to address his claims that his trial counsel was ineffective. *See* 28 U.S.C. § 2253(c).

## II. STANDARD OF REVIEW

We review *de novo* the grant or denial of a petition for a

writ of habeas corpus. *Reed v. Sec'y, Fla. Dep't of Corr.*, 767 F.3d 1252, 1260 (11th Cir. 2014). The Antiterrorism and Effective Death Penalty Act "imposes a highly deferential standard for evaluating state-court rulings." *Id.* at 1261 (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)). A state prisoner is entitled to a writ of habeas corpus only if the state court reached a decision that "involved an unreasonable application of . . . clearly established Federal law." 28 U.S.C. § 2254(d)(1). That is, the state court must have "identifie[d] the correct governing legal principle from the Supreme Court's decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." *Reed*, 767 F.3d at 1260 (internal quotation marks omitted and alterations adopted). "[A]n unreasonable application of . . . [a Supreme Court decision] must be objectively unreasonable, not merely wrong; even clear error will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014) (internal quotation marks omitted). The prisoner "must show that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

## III. DISCUSSION

Both the State and Curry-Pennamon challenge the judgment of the district court. The State argues that the district court gave no deference to the decision of the state court that appellate counsel did not render ineffective assistance. Curry-Pennamon argues that trial counsel was ineffective for failing to request jury

instructions on the place-of-business exception, prior threats, and the state stand-your-ground law.

Curry-Pennamon must "[s]urmount[] . . . [a] high bar" to overcome the presumption that his trial counsel performed adequately. *See Richter*, 562 U.S. at 105. Not only must Curry-Pennamon prove that his trial counsel committed an error that was "so serious as to deprive [him] of a fair trial," *Strickland*, 466 U.S. at 687, he also must overcome the "'doubly deferential' [standard that applies] when, as here, a state court has decided that counsel performed adequately." *Dunn v. Reeves*, 141 S. Ct. 2405, 2410 (2021). "[I]n more concrete terms, a federal court may grant relief only if *every* fairminded jurist would agree that *every* reasonable lawyer would have made a different decision." *Id.* at 2411 (internal quotations marks omitted and alteration adopted).

## A. The District Court Erred by Rejecting the Decision of the State Court that Curry-Pennamon's Claim of Ineffective Assistance of Appellate Counsel Failed "on the Merits."

Curry-Pennamon argued at trial that he shot Holloway in self-defense. Florida law as follows allowed the use of deadly force when justifiable:

> A person who is not engaged in an unlawful activity and who is attacked in any . . . place where he . . . has a right to be has no duty to retreat and has the right to stand his . . . ground and meet force with force, including deadly force if he . . . reasonably believes it is necessary to do so to prevent death or great bodily

harm to himself . . . .

Fla. Stat. § 776.013(3) (effective Oct. 1, 2005, to June 19, 2014). The law forbade carrying a concealed firearm without a permit, *id.* § 790.01, but it allowed a person without a permit to carry a concealed firearm at his place of business, *id.* § 790.25(3)(n).

When selecting what issues to raise on appeal, Curry-Pennamon's appellate counsel was bound by rules of issue preservation. In Florida, "trial counsel's failure to object to . . . [an alleged error] operates as a procedural bar that generally precludes appellate review of such an unpreserved error." *Jimenez v. State*, 167 So. 3d 497, 499 (Fla. Dist. Ct. App. 2015). "Unpreserved errors cannot successfully be raised on appeal unless they amount to fundamental error." *Valentine v. State*, 98 So. 3d 44, 57–58 (Fla. 2012). To be fundamental, an error must be "patent," such that it has a "qualitative effect" on the proceeding, and be "serious." *Thomas v. State*, 763 So. 2d 316, 316 (Fla. 2000).

Appellate counsel faced a difficult task in obtaining relief on an unpreserved argument involving a jury instruction. "[F]or jury instructions to constitute fundamental error, the error must reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." *Garzon v. State*, 980 So. 2d 1038, 1042 (Fla. 2008) (internal quotation marks omitted). "Where the challenged jury instruction involves an affirmative defense, as opposed to an element of the crime, fundamental error only occurs where a jury instruction is so flawed as to deprive defendants claiming the defense of a

fair trial." *Martinez v. State*, 981 So. 2d 449, 455 (Fla. 2008) (internal quotation marks omitted).

To determine whether the state court unreasonably applied clearly established federal law when it summarily rejected Curry-Pennamon's claim of ineffective appellate counsel, "our task is to determine what arguments or theories could have supported the state court's decision, and . . . [to] deny relief if it is possible fair-minded jurists could find that decision was not contrary to, or involved an unreasonable application of" *Strickland*. *Pinkney v. Sec'y, Dep't of Corrs.*, 876 F.3d 1290, 1298 (11th Cir. 2017). As in *Pinkney*, we interpret that decision "as having been based on the theory that while the [concealed weapon] instruction was error, it was not fundamental error and, as a result, the direct appeal court would not have decided that claim on the merits if appellate counsel had raised the claim." *Id.* at 1299.

The state court could have concluded that the faulty jury instruction did not create "error so prejudicial as to vitiate the entire trial." *See Jimenez*, 167 So. 3d at 499. The state court could have concluded that the jury would have returned the same verdict even if instructed that Curry-Pennamon carried the firearm lawfully. After all, Curry-Pennamon pursued and shot Holloway as he ran away. Based on that evidence, the state court could have concluded that the jury would have found Curry-Pennamon did not reasonably believe the use of deadly force was "necessary . . . to prevent death or great bodily harm to himself." *See* Fla. Stat. § 776.013(3).

The district court erred by refusing to defer to the decision

of the state court. The district court incorrectly rejected the decision of the state court as unreasonable based on its failure to provide "an opinion . . . explaining [its] reasoning" or to cite *Strickland*. *See Richter*, 562 U.S. at 98. The district court also erroneously reviewed appellate counsel's conduct *de novo*. *See Shinn v. Kayer*, 141 S. Ct. 517, 523 (2020). We reverse the grant of the writ to Curry-Pennamon based on ineffective appellate counsel.

*B. The State Court Reasonably Applied* Strickland *by Denying Curry-Pennamon's Claim that Trial Counsel Should Have Requested a Jury Instruction on the Place-of-Business Exception.*

Curry-Pennamon's claim that trial counsel was ineffective for failing to request an instruction on the place-of-business exception fails. *See Dunn*, 141 S. Ct. at 2411. The state court reasonably determined that it would have been futile for trial counsel to request a place-of-business exception instruction after the trial court twice rejected arguments that the exception applied to Curry-Pennamon. *See Pinkney*, 876 F.3d at 1297 ("[A]n attorney will not be held to have performed deficiently for failing to perform a futile act . . . ."). The state court reasonably applied *Strickland*.

*C. The State Court Reasonably Decided that Curry-Pennamon Was Not Prejudiced by Trial Counsel's Failure to Request a Jury*

*Instruction on Prior Threats.*

Fairminded jurists could also agree that trial counsel's failure to request a prior-threats instruction did not prejudice Curry-Pennamon. Trial counsel did not need to further highlight uncontested evidence that Holloway threatened Curry-Pennamon. *Meders v. Warden, Ga. Diagnostic Prison*, 911 F.3d 1335, 1354 (11th Cir. 2019) ("[I]t is not prejudicial for an attorney to fail to point out to the jury something that is obvious from the evidence."). And the trial court directed the jury to consider Holloway's threats in determining whether Curry-Pennamon's use of deadly force was justifiable. The trial court instructed the jury "[i]n deciding whether [Curry-Pennamon] was justified in the use of deadly force . . . [to] judge him by the circumstances by which he was surrounded at the time the force was used." The state court reasonably concluded that trial counsel's failure to request a prior-threats instruction would not have changed the outcome of Curry-Pennamon's trial. *See Richter*, 562 U.S. at 105.

## D. Curry-Pennamon Failed to Establish Cause to Excuse His Procedurally Defaulted Claim that Trial Counsel Should Have Requested an Instruction that His Use of Force was Justified.

Curry-Pennamon never presented and procedurally defaulted his claim that his trial counsel should have requested a jury instruction that his use of deadly force was justifiable because he faced imminent harm even though he was engaged in an unlawful activity, *see* Fla. Stat. § 776.012(1) (effective Oct. 1, 2005, to June 19, 2014). *See Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

20-14106               Opinion of the Court               15

So Curry-Pennamon could not litigate his claim in his federal habeas corpus proceeding unless he could establish cause and prejudice to excuse his default. *Id.* at 750. To establish cause, Curry-Pennamon had to prove that his claim was "a substantial one . . . [in that] the claim has some merit." *Martinez*, 566 U.S. at 14.

When Curry-Pennamon went to trial, a person could be immune from prosecution if his use of deadly force was permitted under sections 776.012 or 776.013 of the Florida Statutes. Fla. Stat. § 776.032(1). Under section 776.013, a defendant could use deadly force to stand his ground if he was engaged in a lawful activity:

> A person who is not engaged in an unlawful activity and who is attacked in any other place where he or she has a right to be has no duty to retreat and has the right to stand his or her ground and meet force with force, including deadly force if he or she reasonably believes it is necessary to do so to prevent death or great bodily harm to himself or herself or another or to prevent the commission of a forcible felony.

*Id.* § 776.013(3). Under section 776.012, a defendant could use deadly force to prevent imminent injury regardless of the lawfulness of his activity:

> [A] person is justified in the use of deadly force and does not have a duty to retreat if . . . [he] reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself or another or to prevent the imminent commission of a forcible felon.

*Id.* § 776.012(1).

Three months before Curry-Pennamon's trial, the Second District Court of Appeals certified a question to the Florida Supreme Court asking it to decide whether a defendant engaged in an unlawful activity could be immune from prosecution under section 776.012(1). *Little v. State*, 111 So. 3d 214, 222–23 (Fla. Dist. Ct. App. 2013). The court in *Little* held that a felon in possession of a firearm at the time of the shooting could not avoid prosecution under section 776.013 but could do so under section 776.012(1). *Id.* at 218–22. But the court acknowledged that its decision potentially conflicted with a decision of the Fourth District Court of Appeals that a felon in possession of a firearm at the time of the shooting could not be immune from prosecution under section 776.013. *State v. Hill*, 95 So. 3d 434, 434 (Fla. Dist. Ct. App. 2012). Although the state supreme court never answered the question, effective June 20, 2014, amended section 776.012 provides that a person is justified in using deadly force only if he is *not* engaged in criminal activity, Fla. Stat. § 776.012(2).

The uncertainty as to section 776.012(2) at the time of Curry-Pennamon's trial established that his claim of ineffective trial counsel was not substantial and did not provide cause to excuse his procedural default. *See Martinez*, 566 U.S. at 14. Trial counsel could not predict whether Curry-Pennamon could justify his use of deadly force when, according to the trial court, he had been engaged in the unlawful activity of carrying a concealed weapon without a permit. *See Rambaran v. Sec'y, Dep't of Corr.*, 821 F.3d

1325, 1334 (11th Cir. 2016) ("[W]e have held many times that reasonably effective representation cannot and does not include a requirement to make arguments based on predictions of how the law may develop."). So trial counsel was not ineffective in failing to request a jury instruction based on section 776.012(1). *See Brewster v. Hetzel*, 913 F.3d 1042, 1057 (11th Cir. 2019) ("It is not ineffective assistance for counsel to fail to make an objection or motion that depends on the future development of the law.").

## IV. CONCLUSION

We **AFFIRM** in part, **REVERSE** in part, and **REMAND** for the district court to reinstate Curry-Pennamon's conviction.