RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 21a0214p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

BENNY LEE HODGE,

           *Petitioner-Appellant*,

    *v.*

SCOTT JORDAN, Warden,

           *Respondent-Appellee*.

No. 17-6032

Appeal from the United States District Court
for the Eastern District of Kentucky at Pikeville.
No. 7:13-cv-00005—David L. Bunning, District Judge.

Argued: October 20, 2020

Decided and Filed: September 10, 2021

Before: SILER, COOK, and WHITE, Circuit Judges.[*]

───────────────

### COUNSEL

**ARGUED:** Dennis J. Burke, DEPARTMENT OF PUBLIC ADVOCACY, LaGrange, Kentucky, for Appellant. Brett R. Nolan, OFFICE OF THE ATTORNEY GENERAL OF KENTUCKY, Frankfort, Kentucky, for Appellee. **ON BRIEF:** Dennis J. Burke, DEPARTMENT OF PUBLIC ADVOCACY, LaGrange, Kentucky, Dana C. Hansen Chavis, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Knoxville, Tennessee, for Appellant. Joseph A. Newberg, II, OFFICE OF THE ATTORNEY GENERAL OF KENTUCKY, Frankfort, Kentucky, for Appellee.

      SILER, J., delivered the opinion of the court in which COOK, J., joined. WHITE, J. (pp. 8–9), delivered a separate opinion concurring in part and dissenting in part.

───────────────

[*]The Honorable Deborah L. Cook participated in this decision before she took inactive senior status on August 27, 2021.

---

**OPINION**

---

SILER, Circuit Judge.  In 1986, a Kentucky jury convicted Benny Hodge for the murder of Tammy Acker, the attempted murder of Dr. Roscoe Acker, first-degree robbery, and first-degree burglary.  After finding Hodge and codefendant Roger Dale Epperson guilty, the jury recommended death for both.  Hodge filed this habeas petition, claiming his counsel provided ineffective assistance of counsel (IAC) at the sentencing phase.  Bound by deference under the Antiterrorism and Effective Death Penalty Act (AEDPA), we reject that claim.  Hodge also alleges he was denied a fair trial because of jury tampering and the close relationship between the prosecutor and jury foreman.  Those claims are also without merit.[1]  We affirm the district court and deny the writ.

I

Hodge and Donald Bartley posed as FBI agents to enter the home of Dr. Acker, an Eastern Kentucky doctor.  *Hodge v. Commonwealth*, No. 2009-SC-000791-MR, 2011 WL 3805960, at *4 (Ky. Aug. 25, 2011) (unpublished).  Once inside, they tied up the elderly doctor and his daughter, Tammy.  *Id.*  The two men, joined by Epperson, ransacked the house, and forced Dr. Acker to open the safe they found.  *Epperson v. Commonwealth*, 809 S.W.2d 835, 838 (Ky. 1990).

After collecting nearly $2 million in cash, Epperson and Bartley strangled Dr. Acker until he lost consciousness.  *Hodge*, 2011 WL 3805960, at *4.  Hodge brutally stabbed Tammy at least ten times with a large kitchen knife, killing her.  *Id.*  Together the men fled to Florida.  *Id.* at *5.  Until they were caught, "they brazenly spent the stolen money on a lavish lifestyle and luxury goods, including a Corvette."  *Id.*

After his initial conviction, Hodge's case has gone up and down the Kentucky judicial system three times.  The Kentucky Supreme Court previously granted post-conviction relief and

---

[1]We do not consider his claim that was not certified for appellate review.  *Abdur'Rahman v. Colson*, 649 F.3d 468, 473 (6th Cir. 2011).

ordered the trial court to consider Hodge's jury tampering and ineffective assistance of counsel claims. But the trial court again denied relief. The Kentucky Supreme Court affirmed. *Id.* Hodge then sought habeas relief in federal court on numerous grounds. The district court rejected each of the claims.

## II

Hodge alleges that his lawyer, Dale Mitchell, provided ineffective assistance at the penalty phase by neither investigating nor presenting mitigating evidence. He must, therefore, show "that [his] lawyers performed well below the norm of competence in the profession and that this failing prejudiced [his] case." *Caudill v. Conover*, 881 F.3d 454, 460 (6th Cir. 2018) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). But that is not all. The Kentucky Supreme Court already rejected his ineffective assistance claim. So, AEDPA also requires that Hodge demonstrate that the state court's ruling was unreasonable. 28 U.S.C. § 2254(d). Said simply, we must give double deference to the state court's determination. S*ee Harrington v. Richter*, 562 U.S. 86, 105 (2011).

Begin with Mitchell's performance. Hodge's mitigation case at trial consisted of a two-sentence stipulation: he had "a loving supportive family—a wife and three children" and he had "a public job work record."[2] *Hodge*, 2011 WL 3805960, at *2. The jury heard nothing else. A lawyer, however, must investigate and reasonably present mitigating factors. *See Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (citing *Strickland*, 466 U.S. at 691). Because Mitchell did not, the Warden agrees that Mitchell's performance fell below the constitutional bar.

Nonetheless, Hodge must also show he was prejudiced by Mitchell's ineffective representation. The Kentucky Supreme Court has held he cannot. Therefore, Hodge must clear two hurdles. First, he must demonstrate "a reasonable probability that at least one juror would have struck a different balance." *Id.* at 537. That is, the chance one juror would have voted against death "must be substantial, not just conceivable." *Richter*, 562 U.S. at 112. To do so, Hodge must present "evidence that 'differ[s] in a substantial way—in strength and subject

---

[2]Mitchell did not perform a significant investigation, in part, because he was paid $200,000, not the $350,000 he was initially promised.

matter—from the evidence actually presented at sentencing.'" *Caudill*, 881 F.3d at 464 (quoting *Hill v. Mitchell*, 400 F.3d 308, 319 (6th Cir. 2005)). Second, Hodge must show "that the state court's decision is so obviously wrong that its error lies 'beyond any possibility for fairminded disagreement.'" *Shinn v. Kayer*, 141 S. Ct. 517, 523 (2020) (quoting *Richter*, 562 U.S. at 103) (per curiam). And because he cannot, his claim fails.

Consider first the available mitigating evidence. Hidden behind Hodge's sentencing phase stipulation was a childhood marred by the "most severe and unimaginable level of physical and mental abuse." *Hodge*, 2011 WL 3805960, at *5.

But an unhappy childhood only got worse when his mother, Kate, married Billy Joe Hodge. Billy Joe was a "monster," prone to extreme violence. *Id*. at *3. Sometimes he would be triggered by Kate's "shows of affection towards her children." *Id*. Frequently, however, he would turn to violence for no reason at all. Billy Joe "would regularly rape Kate, threaten her with a gun, and beat her." *Id*. On one occasion his abuse caused her to have a miscarriage.

Hodge, on the other hand, was repeatedly beaten with a belt and metal buckle; kicked; thrown against the walls; and punched. *Id*. Billy Joe even "rubbed Hodge's face in his own feces." *Id*. Still worse, Billy Joe brutally killed Hodge's dog in front of him. *Id*. Nobody, including his own mother, ever did anything to end the cruelty. *Id*.

Billy Joe's abuse appears to have changed Hodge's life. Before Billy Joe entered the home, Hodge displayed signs of normal intelligence, rarely missed school, and received decent grades. Afterwards, "his grades declined, he became withdrawn, and he was often truant." *Id*. at *4. Hodge began to steal. So, by the age of fifteen he was sentenced to a juvenile detention facility. Far from an oasis, the situation at the facility was not much better than his home. Inside, he was subjected to regular and brutal beatings. *Id*.

Psychologists now believe that the violence he experienced both at home and in the facility was "ruinous to his development." *Id*. And the experience left him scarred with post-traumatic stress disorder (PTSD), which "can render a person violent, hypervigilant, aggressive, and erratic." *Id*. The psychologists also believe Hodge had PTSD at the time he killed Tammy and during the trial for that crime. *Id*.

The court, however, must "keep in mind the State's evidence on the other side of the scale." *Caudill*, 881 F.3d at 464 (citing *Wong v. Belmontes*, 558 U.S. 15, 27 (2009) (per curiam)). And it was substantial. Hodge stabbed a young woman at least ten times with such force that the knife went all the way through her chest, and he coolly reported the stabbing to Epperson. He then fled to Florida where he allegedly fornicated on top of Dr. Acker's money. *Id.* at *5. Although it went unheard by the jury, Hodge also had a lengthy criminal history (burglary, grand larceny, armed robbery, and escape). Those convictions must go on the ledger against overturning his death sentence. *See Shinn*, 141 S. Ct. at 525.

After reweighing the mitigating evidence against the aggravating evidence, the Kentucky Supreme Court found no prejudice. It reasoned that "the particularly depraved and brutal nature of [the] crimes" meant a sentencing jury would not have spared Hodge's life. *Hodge*, 2011 WL 3805960, at *5. To that point, it found that the mitigation evidence "offers virtually no rationale for the premeditated, cold-blooded murder and attempted murder of two innocent victims who were complete strangers to Hodge." *Id.*; *see also Canales v. Davis*, 966 F.3d 409, 415 n.2 (5th Cir. 2020) (finding childhood mitigation evidence does little to explain participation in a cold-blooded murder). In other words, the Kentucky Supreme Court conducted the "probing inquiry" required by the law. *See Sears v. Upton*, 561 U.S. 945, 956 (2010) (per curiam). So, although we may have reached a different conclusion, we cannot say the Kentucky Supreme Court's ruling was obviously wrong. *See Shinn*, 141 S. Ct. at 523.

No Supreme Court precedent dictates a different conclusion. From *Andrus* to *Williams*, each of the cases has meaningful differences from this case. *See Andrus v. Texas*, 140 S. Ct. 1875 (2020); *Sears v. Upton*, 561 U.S. 945 (2010); *Porter v. McCollum*, 558 U.S. 30 (2009) (per curiam); *Rompilla v. Beard*, 545 U.S. 374 (2005); *Wiggins*, 539 U.S. at 514; *Williams v. Taylor*, 529 U.S. 362, 395–98 (2000). Perhaps most importantly, only *Porter* required the court to give deference to a no-prejudice determination. *Porter*, 558 U.S. at 42. And there, the defendant's heroic war record provided additional (positive) mitigating evidence. *Id.* at 43–44. Even in this court's case, *Foust*, the defendant attempted to change the trajectory of his siblings. *Foust v. Houk*, 655 F.3d 524, 543 (6th Cir. 2011). Unlike *Foust* and *Porter*, Hodge does not present any positive mitigating factors. And unlike *Foust*, Hodge has a significant criminal record.

Therefore, the Kentucky Supreme Court's ruling was not contrary to Supreme Court precedent, and "was not so obviously wrong as to be 'beyond any possibility for fairminded disagreement.'" *Shinn*, 141 S. Ct. at 526 (citing *Richter*, 562 U.S. at 103).

III

Hodge also alleges jury tampering.  Because Hodge fails to provide credible testimony of jury tampering, his claim fails.

Hodge's star witness was Gary Rogers, the man "responsible for overseeing the sequestered jury."  *Hodge*, 2011 WL 3805960, at *1.  But Rogers had significant credibility issues.  To be sure, he testified that: (1) "he saw the jury foreman talking to [the Commonwealth's Attorney] at the courthouse, though he did not overhear the conversation"; (2) "he saw [the Commonwealth's Attorney] in the parking lot of the hotel where the jury was sequestered"; and (3) he "remembered that one of the jurors was provided three bottles of vodka and others with televisions and newspapers."  *Id*.  But he contradicted those statements moments later.  *Id*.  Indeed, he "emphatically testified that no one approached any juror and that no juror had access to television or newspapers."  *Id*.

Moreover, Rogers was a convicted felon.  *Id*.  A conviction he claimed was connected to "his attempts to assist Hodge and Epperson."  *Id*.  It was not.  *Id*.  Rogers also denied ever speaking to or giving statements to the Department of Public Advocacy attorneys and investigators about the allegations.  *Id*. at *2.  Although that is certainly untrue, even his statements to those individuals were inconsistent.  *Id*.

Any residual belief in Rogers's claims was further dispelled by the testimony of an alternate juror.  *Id*.  She disputed all of Rogers's allegations.  "She testified that no jurors were allowed visitors during sequestration and that no one communicated with the jury."  *Id*.  She also "testified that the jury did not discuss the case and that she had no knowledge of anyone watching television or listening to the radio."  *Id*.  Although she suffered from PTSD and bipolar disease, the trial court (and the Kentucky Supreme Court) credited her testimony.  *Id*.

After review of the trial court's findings, the Kentucky Supreme Court found there was "no credible evidence presented to support a conclusion that any jury tampering or misconduct occurred." *Id*. We agree. Therefore, Hodge cannot meet his burden under AEDPA.

IV

Hodge did not raise his juror bias claim in state court. Instead, he asserted that Mitchell was ineffective for failing to inquire or learn about the relationship between the Commonwealth's attorney and the jury foreperson. But raising an ineffective assistance claim does not preserve the merits of the underlying substantive claim. *Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008). And Kentucky state procedural rules would now bar consideration of this claim. *See Hodge v. Haeberlin*, 579 F.3d 627, 637–38 (6th Cir. 2009). Therefore, Hodge must excuse his procedural default by showing cause and prejudice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). He does not. Accordingly, his juror bias claim was defaulted.

V

Because we must give double deference to the law in *Strickland* and to the Kentucky Supreme Court's decision that there was insufficient prejudice to warrant granting the writ under *Strickland*, we decline to grant the writ.

The denial of the writ by the district court is AFFIRMED.

---

### CONCURRING IN PART AND DISSENTING IN PART

---

HELENE N. WHITE, Circuit Judge, concurring in part and dissenting in part. I disagree with the majority's conclusion that the Kentucky Supreme Court's analysis of *Strickland*'s prejudice prong was not contrary to clearly established Supreme Court precedent. I echo the concerns of Justice Sotomayor in her dissent from the denial of Hodge's petition for certiorari on his post-conviction appeal. *See Hodge v. Kentucky*, 133 S. Ct. 506, 506-11 (2012). Although the Kentucky Supreme Court was entitled to reweigh the mitigating and aggravating evidence, from the language of the opinion it appears the Kentucky court determined that in instances of particularly brutal or premeditated murder, evidence of the defendant's difficult upbringing can only be weighty enough to sway the jury to the extent it offers a "rationale" for the murder. And this reasoning "is contrary to [the Supreme Court's] cases applying *Strickland*'s prejudice prong." *Id.* at 510.

In *Rompilla v. Beard*, 545 U.S. 374 (2005), the Supreme Court considered whether a defendant was prejudiced by his counsel's failure to investigate and present mitigation evidence that the defendant had grown-up in a home similarly dysfunctional to Hodge's, endured extreme abuse as a child, and had significant mental-health problems likely resulting from the abuse. *Id.* at 392-93. Rompilla's crime was undoubtedly brutal: he was found guilty of murdering a bar-owner during a burglary by stabbing him and setting him on fire, and the jury specifically found that Rompilla committed the murder by means of torture. *Rompilla v. Horn*, 355 F.3d 233, 236-38 (3d Cir. 2004). Rompilla also had a history of violent felonies, including a conviction for a factually similar crime in which he had burglarized a bar after closing, raped the bar owner, and slashed her with a knife. *Id.* at 237. Nonetheless, the Supreme Court found that although it is "possible that a jury could have heard [the mitigating evidence] and still have decided on the death penalty," the "mitigating evidence, taken as a whole, might well have influenced the jury's appraisal of Rompilla's culpability . . . and the likelihood of a different result if the evidence had gone in [was] sufficient to undermine confidence in the outcome actually reached at sentencing." *Rompilla*, 545 U.S. at 393 (internal quotation marks and

citations omitted).  Although there are some differences between this case and *Rompilla* that may have given the Kentucky Supreme Court leeway to come to a different factual conclusion, there is no room in *Rompilla* for a rule that mitigating evidence can only sway a jury in brutal murder cases if it offers a rationale for the crime.  The facts of Rompilla's conviction were undeniably brutal, and his mitigation evidence did nothing to explain the crime.

Similarly, in *Wiggins v. Smith*, 539 U.S. 510 (2003), the Supreme Court held that the defendant who was found guilty of drowning a seventy-seven-year-old woman in her bathtub was prejudiced by counsel's failure to produce evidence of a childhood characterized by extreme neglect and physical and sexual abuse.  *Id.* at 538.  Though the crime was undoubtedly disturbing, the Court explained that evidence of the defendant's extremely difficult childhood, taken with other mitigating evidence, "'might well have influenced the jury's appraisal' of Wiggins' moral culpability."  *Id.* (quoting *Williams v. Taylor*, 529 U.S. 362, 398 (2000)).  Once again, the question whether mitigation evidence provided a rationale for the crime had no bearing in the Court's analysis.

Based on these cases, each of which was decided well in advance of the Kentucky Supreme Court's denial of Hodge's post-conviction appeal, the Kentucky Supreme Court's reasoning was contrary to established Supreme Court precedent.  Although a state court's weighing of aggravating and mitigating factors is entitled to deference such that it may not be disturbed unless "beyond any possibility for fairminded disagreement," it is not the weighing of the factors itself that is problematic in this case but rather the standards the Kentucky Supreme Court applied to conduct its analysis.  The Kentucky Supreme Court's plain language implied that evidence regarding a defendant's life experience could only outweigh a particularly violent and cold-blooded crime where the defendant's background provides a "rationale" for the crime.  And as Justice Sotomayor observed, "[t]he Kentucky Supreme Court's brief discussion of the weight and impact of Hodge's mitigation evidence reasonably suggests that its prejudice determination flowed from its legal errors."  *Hodge*, 133 S. Ct. at 510.  That error, rather than the weight the Kentucky Supreme Court accorded to aggravating and mitigating evidence, is what makes this an unreasonable application of established Supreme Court precedent.

For that reason, I dissent from the denial of habeas relief.