RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 24a0034p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

BENNY LEE HODGE,

　　　　　　　　　*Petitioner - Appellant*,

　　　*v.*

SCOTT JORDAN, Warden,

　　　　　　　　　*Respondent - Appellee*.

No. 17-6032

On Petition for Panel Rehearing

United States District Court for the Eastern District of Kentucky at Pikeville.
No. 7:13-cv-00005—David L. Bunning, District Judge.

Argued:  October 20, 2020

Decided and Filed:  February 22, 2024

Before:  SILER, CLAY, and WHITE, Circuit Judges.[*]

_____

## COUNSEL

**ARGUED:**  Dennis J. Burke, DEPARTMENT OF PUBLIC ADVOCACY, LaGrange, Kentucky, for Appellant.  Brett R. Nolan, OFFICE OF THE ATTORNEY GENERAL OF KENTUCKY, Frankfort, Kentucky, for Appellee.  **ON APPELLANT BRIEF AND ON PETITION FOR PANEL REHEARING:**  Dennis J. Burke, DEPARTMENT OF PUBLIC ADVOCACY, LaGrange, Kentucky, Dana C. Hansen Chavis, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Knoxville, Tennessee, for Appellant.  **ON APPELLEE BRIEF:**  Joseph A. Newberg, II, OFFICE OF THE ATTORNEY GENERAL OF KENTUCKY, Frankfort, Kentucky, for Appellee.  **ON RESPONSE TO PETITION FOR PANEL REHEARING:**  Matthew F. Kuhn, Brett R. Nolan, OFFICE OF THE KENTUCKY ATTORNEY GENERAL, Frankfort, Kentucky, for Appellee.

_____

[*]This case was the subject of a prior opinion, *Hodge v. Jordan*, 12 F.4th 640 (6th Cir. 2021), in which we affirmed the district court's denial of Hodge's petition for habeas corpus.  After we filed that opinion, Judge Cook took inactive senior status, and Hodge filed a petition for rehearing.  Judge Clay was assigned to replace Judge Cook on the panel, and rehearing was granted.

WHITE, J., delivered the superseding opinion of the court in which CLAY, J., joined. SILER, J. (pp. 13–14), delivered a separate dissenting opinion.

---

**SUPERSEDING OPINION**

---

HELENE N. WHITE, Circuit Judge.  Benny Lee Hodge, a Kentucky death-row inmate, appeals the denial of his petition for habeas corpus.  Hodge's petition primarily concerns the ineffective assistance of his trial counsel at the sentencing phase.  Because the Kentucky Supreme Court applied a standard of prejudice that is contrary to established Supreme Court precedent, counsel's failure to present mitigation evidence was constitutionally deficient, and there is a reasonable probability that counsel's failure affected the outcome of Hodge's sentencing, we reverse the district court and remand with instructions to grant conditional habeas relief as to the penalty phase of Hodge's trial.  Hodge also raises jury-tampering and jury-bias claims, which we conclude are without merit.[1]

**I.**

In August 1985, Hodge and two codefendants posed as FBI agents to enter the home of Dr. Roscoe Acker.  *Hodge v. Commonwealth*, No. 2009-SC-000791-MR, 2011 WL 3805960, at *4 (Ky. Aug. 25, 2011).  Once inside, they covered the heads of Dr. Acker and his college-aged daughter, Tammy, and forced Dr. Acker to open his safe.  *Id.*  A co-defendant then strangled Dr. Acker with an electrical cord until he lost consciousness, and Hodge stabbed Tammy at least ten times.  *Id.*  Hodge and his co-defendants stole about two million dollars from the safe.  *Id.* at *1.

Hodge was charged with and convicted of murder, robbery, and burglary.  During the sentencing phase of Hodge's trial, his counsel presented only a two-sentence stipulation, which was read to the jury: "Benny Lee Hodge has a loving and supportive family-a wife and three children.  He has a public job work record and he lives and resides permanently in Tennessee." *Id.* at *2.  The jury recommended that Hodge be sentenced to death and the trial court imposed a

---

[1]Although Hodge's brief argues that the prosecution withheld material impeachment evidence and failed to correct false or misleading testimony at his trial, we do not consider that claim because it was not certified for appellate review.  *See Abdur'Rahman v. Colson*, 649 F.3d 468, 473 (6th Cir. 2011).

death sentence the same day.  Hodge and his codefendant filed a combined direct appeal, which the Supreme Court of Kentucky denied. *See Epperson v. Commonwealth*, 809 S.W.2d 835 (Ky. 1990).

Over the last three decades, Hodge has pursued several postconviction challenges.  In 1992, Hodge filed an unsuccessful state-court motion to vacate his conviction, alleging, among other things, ineffective assistance of counsel (IAC) and jury tampering.  *Hodge*, 2011 WL 3805960, at *1.  On appeal, the Kentucky Supreme Court ordered the trial court to hold an evidentiary hearing. *Hodge v. Commonwealth*, 68 S.W.3d 338, 345 (Ky. 2001).  The trial court did so and denied relief.  The Kentucky Supreme Court affirmed.  *Hodge*, 2011 WL 3805960. Hodge petitioned the Supreme Court of the United States for a writ of certiorari, which was denied. *Hodge v. Kentucky*, 568 U.S. 1056 (2012) (mem.).  In 2013, Hodge sought a writ of habeas corpus in the United States District Court for the Eastern District of Tennessee. *Hodge v. White*, No. CV 13-5-DLB-EBA, 2016 WL 4425094 (E.D. Ky. Aug. 17, 2016).  The district court denied Hodge's petition, and this appeal followed.

## II.

As described by the Kentucky Supreme Court, postconviction counsel provided considerable mitigation evidence that trial counsel failed to present to the jury at the sentencing phase:

> [W]e turn to a review of the mitigation evidence that was available at the time of Hodge's trial.  His mitigation case would have been based on his childhood, which was marked by extreme poverty, sustained physical violence, and constant emotional abuse.  The trial court's characterization of Hodge's childhood as "difficult" is not inaccurate, but certainly inadequate.
>
> The evidence established that Hodge's mother, Kate, was married to six different men, all of whom were substance abusers and some of whom were physically abusive to Kate.  She married Billy Joe when Hodge was eight years old.  The majority of Hodge's evidence concerned the extreme violence he suffered at the hands of his stepfather.  Again, the trial court's description of Billy Joe as "particularly abusive" is insufficient.
>
> Billy Joe was described by at least four witnesses as a "monster."  His rage was explosive and violent, often triggered by Kate's shows of affection towards her children.  At other times, he was incited for no apparent reason and the household lived in constant fear as a result.  He would regularly rape Kate, threaten her with

a gun, and beat her. On one occasion, Billy Joe assaulted Hodge's mother so violently that she suffered a miscarriage. Hodge's sisters testified that, more than once, they thought Kate had been beaten to death.

Hodge's mother and sisters agreed that Billy Joe was more violent and abusive towards [Hodge] than any other person in the house. This is perhaps because Hodge, being the only male child in the home, often tried to defend his mother and sisters from physical attacks. He was regularly beaten with a belt and metal buckle, which left bruises and welts on his body that were observed by family members and neighbors alike. At other times, he was kicked, thrown against walls, and punched. Hodge's half-sister specifically recalled an occasion when Billy Joe rubbed Hodge's face in his own feces. His sisters testified that Billy Joe made [Hodge] watch while he brutally killed [Hodge's] dog. Because his mother, who was evidently paralyzed by fear and substance abuse, refused to protect Hodge, he often ran away from home.

School records indicate that Hodge was of normal intelligence and received average grades through elementary school. After Billy Joe entered the home, his grades declined, he became withdrawn, and he was often truant. He began stealing at the age of twelve and was sentenced to a juvenile detention facility when he was fifteen.

There was testimony that, at the Tennessee residential facility, Hodge was subjected to regular beatings. He escaped from the facility twice and once refused to return after a furlough. After finally being released at the age of sixteen, Hodge assaulted his stepfather, which resulted in his return to the juvenile facility until he was eighteen years old.

At the age of twenty, Hodge pled guilty to his first felonies: burglary and grand larceny. He escaped from custody four days later. Following his capture and eventual parole, he was convicted of a separate armed robbery. Again, he escaped and was recaptured. After serving nearly eight years in prison for that felony, Hodge was again paroled. He was thirty-four years old at the time he killed Tammy Acker. He had been married three times and had fathered three children.

At the evidentiary hearing, Hodge presented the expert opinions of two psychologists, both of whom had assessed him in 2009. Both agreed that the violence in Hodge's childhood home was ruinous to his development and compounded by the physical abuse occurring at the Tennessee residential facility. One of the psychologists diagnosed Hodge with post traumatic stress disorder (PTSD) and opined that it was present at the time of Hodge's crimes and trial. This expert further testified that PTSD can render a person violent, hypervigilant, aggressive, and erratic. Both psychologists found it particularly interesting to note that Hodge did not inflict any abuse on his own children and was described by all as a loving father.

*Hodge*, 2011 WL 3805960, at *3-4. Hodge's history of being abused, as well as his mental-illness diagnosis, went unheard by the jury, who instead heard only the two-sentence stipulation provided by counsel.

**III.**

To prevail on a habeas claim premised on IAC, Hodge must satisfy the two-part test of *Strickland v. Washington*, 466 U.S. 668, 687 (1984). He must show both "that [his] lawyers performed well below the norm of competence in the profession and that this failing prejudiced [his] case." *Caudill v. Conover*, 881 F.3d 454, 460 (6th Cir. 2018) (citing *Strickland*, 466 U.S. at 687). And because the Kentucky Supreme Court has already rejected Hodge's IAC claim, the Antiterrorism and Effective Death Penalty Act (AEDPA) also requires that he demonstrate that the Kentucky Supreme Court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2554(d)(1). In sum, we must give double deference to the state court's determination. *See Harrington v. Richter*, 562 U.S. 86, 105 (2011). A district court's denial of a habeas petition is reviewed de novo. *Mitchell v. MacLaren*, 933 F.3d 526, 531 (6th Cir. 2019). "The district court's findings of fact are reviewed for clear error, and its legal conclusions on mixed questions of law and fact are reviewed de novo." *Id*.

**A.**

Counsel had a duty to reasonably investigate and present the mitigating evidence set out above; but the jury heard no mitigation evidence beyond the two-sentence stipulation. *See Wiggins v. Smith*, 539 U.S. 510, 521-22 (2003) (citing *Strickland*, 466 U.S. at 691). Because counsel failed to investigate, it is undisputed that his performance fell below the constitutional bar, as the Kentucky Supreme Court found. *Hodge*, 2011 WL 3805960 at *3; *see Williams v. Taylor*, 529 U.S. 362, 371 (2000) ("Counsel's failure to discover and present . . . significant mitigating evidence was below the range expected of reasonable, professional competent assistance of counsel." (internal quotation marks and citation omitted)).

*Strickland*'s second prong requires Hodge to show that counsel's constitutionally deficient representation "prejudiced [his] case." *Caudill*, 881 F.3d at 460 (citing *Strickland*, 466 U.S. at 687). "In the capital sentencing context, the prejudice inquiry asks 'whether there is a reasonable probability that, absent the errors, the sentencer . . . would have concluded the balance of aggravating and mitigating circumstances did not warrant death.'" *Shinn v. Kayer*, 592 U.S. 111, 117–18 (2020) (quoting *Strickland*, 446 U.S. at 695). Where, as here, the unanimous jury submitted a recommendation for the death penalty, this means that Hodge must demonstrate "a reasonable probability that at least one juror would have struck a different balance." *Wiggins*, 539 U.S. at 537. The chance one juror would have voted against death "must be substantial, not just conceivable," *Richter*, 562 U.S. at 112, and must be demonstrated with "evidence that 'differ[s] in a substantial way—in strength and subject matter—from the evidence actually presented at sentencing,'" *Caudill*, 881 F.3d at 464 (alteration in original) (quoting *Hill v. Mitchell*, 400 F.3d 308, 319 (6th Cir. 2005)).

In denying Hodge's IAC claim, the Kentucky Supreme Court engaged in a comprehensive review of Hodge's traumatic childhood and weighed that history against "damaging evidence of [Hodge's] long and increasingly violent criminal history" as well as the "heinous nature" of the crime. *Hodge*, 2011 WL 3805960, at *4-5. The court concluded that:

> There is no doubt that Hodge, as a child, suffered a most severe and unimaginable level of physical and mental abuse. Perhaps this information may have offered insight for the jury, providing some explanation for the career criminal he later became. If it had been admitted, the PTSD diagnosis offered in mitigation might have explained Hodge's substance abuse, or perhaps even a crime committed in a fit of rage as a compulsive reaction. But it offers virtually no rationale for the premeditated, cold-blooded murder and attempted murder of two innocent victims who were complete strangers to Hodge. Many, if not most, malefactors committing terribly violent and cruel murders are the subjects of terrible childhoods.

*Id.* at *5. Based on that assessment, the Kentucky Supreme Court determined that there was no reasonable probability that the jury would not have imposed the death penalty if presented with Hodge's mitigation evidence and Hodge was not prejudiced by counsel's deficient representation. *Id.*

In considering the Kentucky Supreme Court's resolution of the IAC claim, the district court found that although "reasonable jurists could certainly disagree with the Kentucky Supreme Court's analysis, its ruling is not 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Hodge*, 2016 WL 4425094, at *29 (quoting *Richter*, 562 U.S. at 103).

**B.**

**1.**

A federal court may grant habeas relief if the state-court decision was "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state-court decision is "contrary to clearly established federal law if 'the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law,' or 'confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at' an opposite result." *Carter v. Mitchell*, 829 F.3d 455, 468 (6th Cir. 2016) (alteration in original) (quoting *Williams*, 529 U.S. at 405). The Kentucky Supreme Court's requirement that there be a causal connection between mitigation evidence and the underlying crime is contrary to established Supreme Court precedent. Although the Kentucky Supreme Court was entitled to reweigh the mitigating and aggravating evidence, the court appears to have determined that in instances of particularly brutal or premeditated murder, evidence of the defendant's difficult upbringing can only be weighty enough to sway the jury to the extent it offers a "rationale" for the murder. This reasoning is contrary to the Supreme Court's cases applying *Strickland*'s prejudice prong.

In *Wiggins*, the Supreme Court held that a Maryland death-row inmate, who was found guilty of drowning a seventy-seven-year-old woman in her bathtub, was prejudiced by counsel's failure to produce evidence of a childhood characterized by extreme neglect and physical and sexual abuse. 539 U.S. at 538. Although the crime was deeply disturbing, the Court explained that evidence of the defendant's extremely difficult childhood, taken with other mitigating evidence, "'might well have influenced the jury's appraisal' of Wiggins' moral culpability." *Id.*

(quoting *Williams*, 529 U.S. at 398). The question whether mitigation evidence provided an explanation or a rationale for the crime had no role in the Court's analysis.

Similarly, in *Rompilla v. Beard*, 545 U.S. 374 (2005), the Court considered whether a Pennsylvania death-row inmate was prejudiced by his counsel's failure to investigate and present mitigation evidence that the defendant had grown up in a dysfunctional home similar to Hodge's, had endured extreme abuse as a child, and had significant mental-health problems likely resulting from the abuse. *Id.* at 391-93. Rompilla's crime was also brutal: he was found guilty of murdering a bar owner during a burglary by stabbing him and setting him on fire, and the jury specifically found that Rompilla committed the murder by means of torture. *Rompilla v. Horn*, 355 F.3d 233, 236-38 (3d Cir. 2004). Rompilla also had a history of violent felonies, including a conviction for a factually similar crime in which he had burglarized a bar after closing, raped the bar owner, and slashed her with a knife. *Id.* at 237. Nonetheless, the Supreme Court found that although it is "possible that a jury could have heard [the mitigating evidence] and still have decided on the death penalty," the "mitigating evidence, taken as a whole, might well have influenced the jury's appraisal of Rompilla's culpability, and the likelihood of a different result if the evidence had gone in [was] sufficient to undermine confidence in the outcome actually reached at sentencing." *Rompilla*, 545 U.S. at 393 (internal quotation marks and citations omitted). Although there are factual differences between this case and *Rompilla* that go to the weight of the mitigation evidence, *Rompilla* neither held nor implied that mitigating evidence can only sway a jury in brutal murder cases if it offers a rationale for the crime. The facts of Rompilla's conviction were undeniably brutal, and his mitigation evidence did nothing to explain the crime.

Based on these cases, which were decided well before the Kentucky Supreme Court's denial of Hodge's post-conviction appeal, we conclude that the Kentucky Supreme Court's reasoning was contrary to established Supreme Court precedent. Although a state court's weighing of aggravating and mitigating factors is entitled to deference and may not be disturbed unless unreasonable "beyond any possibility for fairminded disagreement," *Richter*, 562 U.S. at 103, we are not concerned here with the weighing of the factors but, rather, the standard the Kentucky Supreme Court applied in conducting its analysis. The Kentucky Supreme Court's

rationale that evidence regarding a defendant's horrific upbringing can only outweigh the aggravating factor of a particularly violent and cold-blooded crime where the defendant's background provides a "rationale" for the crime is an incorrect statement of Supreme Court precedent. And as Justice Sotomayor observed in her dissent from the denial of certiorari in this case, "[t]he Kentucky Supreme Court's brief discussion of the weight and impact of Hodge's mitigation evidence reasonably suggests that its prejudice determination flowed from its legal errors." *Hodge*, 133 S. Ct. at 510 (Sotomayor, J., dissenting from denial of certiorari). That error, rather than the weight the Kentucky Supreme Court accorded to aggravating and mitigating evidence, is what makes the court's decision contrary to established Supreme Court precedent.

**2.**

Without any requirement to prove a causal "nexus" between the mitigation evidence and Hodge's crime, we return to the prejudice analysis. Hodge has made the requisite showing of prejudice. At the sentencing phase, "[t]he judge and jury . . . heard almost nothing that would humanize [Hodge] or allow them to accurately gauge his moral culpability." *Porter v. McCollum*, 558 U.S. 30, 41 (2009); *see also Wiggins*, 539 U.S. at 537 ("Wiggins' sentencing jury heard only one significant mitigating factor-that Wiggins had no prior convictions. Had the jury been able to place petitioner's excruciating life history on the mitigating side of the scale, there is a reasonable probability that at least one juror would have struck a different balance."). And the likelihood that the state would have provided additional damaging information about Hodge's criminal history and use of drugs in response to any mitigation evidence does not render counsel's failure harmless. *Foust v. Houk*, 655 F.3d 524, 546 (6th Cir. 2011) ("Powerful aggravating circumstances, however, do not preclude a finding of prejudice. . . . The new evidence about Foust's family history is overwhelming, and it undermines reasonable confidence in the reliability of Foust's death sentence.").[2]

---

[2]The dissent focuses on *Hodge v. Haeberlin*, 579 F.3d 627 (6th Cir. 2009), involving Hodge's conviction and sentence for a separate murder, to show that in a different case, counsel's presentation of mitigating evidence—which opened the door for the prosecution to present aggravating evidence—did not sway the jury, which still recommended a death sentence. But "the *Strickland* test 'of necessity requires a case-by-case examination of the evidence.'" *Williams*, 529 U.S. at 391 (citation omitted). The dissent does not, and cannot, say that the mitigation

The unheard mitigation evidence here was substantial and significant. Hodge suffered from "a most severe and unimaginable level of physical and mental abuse" during his childhood and adolescent years. *Hodge*, 2011 WL 3805960, at *5. "Had the jury been able to place [Hodge's] excruciating life history on the mitigating side of the scale, there is a reasonable probability that at least one juror would have struck a different balance." *Wiggins*, 539 U.S. at 537. Accordingly, we reverse the district court's denial of habeas on Hodge's IAC claim.

**IV**

Hodge also alleges jury tampering. The Kentucky Supreme Court rejected this claim on the basis that Hodge failed to provide credible evidence of jury tampering.

Hodge's star witness at his postconviction evidentiary hearing was Gary Rogers, the man "responsible for overseeing the sequestered jury." *Hodge*, 2011 WL 3805960, at *1. But Rogers had significant credibility issues. To be sure, he testified that: (1) "he saw the jury foreman talking to [the Commonwealth's Attorney] at the courthouse, though he did not overhear the conversation"; (2) "he saw [the Commonwealth's Attorney] in the parking lot of the hotel where the jury was sequestered"; and (3) he "remembered that one of the jurors was provided three bottles of vodka and others with televisions and newspapers." *Id*. But Rogers contradicted those statements moments later. *Id*. Indeed, he "emphatically testified that no one approached any juror and that no juror had access to television or newspapers." *Id*.

Moreover, Rogers was a convicted felon. He claimed the conviction was connected to "his attempts to assist Hodge and Epperson," but it was not. *Id*. Rogers also denied ever

___

evidence presented in Hodge's other case was identical to the mitigation evidence Hodge points to here. The available description suggests the jury in that case heard a less devasting version of Hodge's life and heard no assessment of the impact of his childhood on his mental state. *See Hodge v. Haeberlin*, No. CIV A. 04-CV-185-KKC, 2006 WL 1895526, at *5 (E.D. Ky. July 10, 2006), *aff'd*, 579 F.3d 627 (6th Cir. 2009) (noting that Hodge's family members "testified to his rough treatment by a series of stepfathers when he was growing up"); *id.* at *83 ("[C]ounsel . . . failed to obtain the services of a mental health expert to testify as to how certain hardships in Hodge's childhood would have impacted him."). And notably, Hodge was sentenced in this case in 1986, but was not sentenced in his other case until 1996. So, although the prosecution in this case could not present any evidence of a conviction for another murder, in Hodge's other case relied on by the dissent, the jury heard about Hodge's conviction in the present case. *See Hodge*, 2006 WL 1895526, at *5 (describing prosecution's witness at the penalty phase "testifying about the petitioner's prior convictions and presenting certified records thereof," including "1986[] convictions for robbery in the first degree, burglary in the first degree, criminal attempt to commit murder, and capital murder, for which he was sentenced to . . . death for the murder").

speaking to or giving statements to the Department of Public Advocacy attorneys and investigators about the allegations. Although that is certainly untrue, even his statements to those individuals were inconsistent.

Any residual belief in Rogers's claims was further undermined by the testimony of an alternate juror, Marsha Hogg Thursty, who disputed all of Rogers's allegations. "She testified that no jurors were allowed visitors during sequestration and that no one communicated with the jury." *Id*. at *2. She also "testified that the jury did not discuss the case and that she had no knowledge of anyone watching television or listening to the radio." *Id*. Although she suffered from PTSD and bipolar disease, the trial court (and the Kentucky Supreme Court) credited her testimony. *Id*.

After review of the trial court's findings, the Kentucky Supreme Court found there was "no credible evidence presented to support a conclusion that any jury tampering or misconduct occurred." *Id*. The Kentucky Supreme Court's decision is both reasonable and consistent with Supreme Court precedent. Therefore, Hodge has not met his burden under AEDPA.

**V.**

Hodge did not raise his juror-bias claim in state court. Instead, he asserted that counsel was ineffective for failing to inquire or learn about the relationship between the Commonwealth's attorney and the jury foreperson. But raising an ineffective assistance claim does not preserve the merits of the underlying substantive claim. *Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008). And Kentucky state procedural rules would now bar consideration of this claim. *See Hodge*, 579 F.3d at 637-38. Therefore, Hodge must excuse his procedural default by showing cause and prejudice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). He has not done so. Accordingly, his juror-bias claim was defaulted.

**VI.**

Because the Kentucky Supreme Court applied an incorrect legal standard of prejudice that is contrary to Supreme Court precedent and Hodge's unheard mitigation testimony considered with the totality of the evidence creates "a reasonable probability that at least one

juror would have struck a different balance," *Wiggins*, 539 U.S. at 537, we **REVERSE** the district court's denial of habeas relief on Hodge's IAC claim and **REMAND** with instructions to grant conditional habeas relief as to the penalty phase.

————————————

**DISSENT**

————————————

SILER, Circuit Judge, dissenting.  I respectfully dissent for the reasons set out in the majority opinion filed on September 10, 2021, denied on a petition for an en banc rehearing, but granted on the petition for a rehearing by the original panel.  However, in the meantime, one of the original panelists in the majority, Judge Cook, took inactive status, and was replaced by another judge, who joined the original dissent to create a new majority contrary to the original majority opinion in this matter.  I recite this not to criticize the workings of this court, but to demonstrate to the readers why the original decision of the majority has now become the dissent.

My position can be found in the original majority opinion, *Hodge v. Scott Jordan*, 12 F.4th 640 (6th Cir. 2021), but I add certain other circumstances herein which support my proposed affirmance of the Kentucky Supreme Court's decision that there was insufficient prejudice to grant the writ under *Strickland v. Washington*, 466 U.S. 668 (1984).  The Kentucky Supreme Court found that defense counsel, Dale Mitchell, was ineffective, because his only evidence in the mitigation part of the trial was that Hodge had "a loving supportive family — a wife and three children" and had "a public job work record."  The prosecution introduced no evidence in the mitigation part of the trial.

I bring to the attention of the court another case involving Hodge in *Hodge v. Haeberlin*, 579 F.3d 627 (6th Cir. 2009), which was decided before our case was argued, but involved part of the crime spree in this case.  In that companion case, in which Hodge was convicted of murder and the jury returned a verdict of death, defense "counsel presented thirteen mitigation witnesses who testified about Hodge's troubled past, including the way family members and the penal system unjustly harmed him." *Id* at 647.  Moreover, that invited the Commonwealth's opportunity to present Hodge's previous criminal convictions, including his conviction and death sentence for capital murder, robbery in the first degree, burglary in the first degree, and criminal attempt to commit murder, from this case, but also armed robbery, escape, and felonious assault in Tennessee. *Hodge v. Haeberlin*, No. 04-cv-185-KKC, 2006 WL 1895526, at *5 (E.D. Ky. July

10, 2006).  This is similar evidence which would have been presented in this case, had defense counsel chosen to make a record.  Hodge is totally wrong about the decision from the Kentucky Supreme Court, as the district court below found.  While the Kentucky Supreme Court balanced all of the available evidence in mitigation and aggravation, Hodge relies upon one sentence from the opinion for a reversal.  Hodge ignores the remainder of the Kentucky Supreme Court's decision in which it repeatedly relied upon the *Strickland* standard in reviewing the evidence. *See Hodge v. Commonwealth*, No. 2009-SC-0791, 2011 WL 3805960 (Ky. Aug. 25, 2011).  It stated that "the evidence of Hodge's abusive childhood would have also included the damaging evidence of his long and increasingly violent criminal history, his numerous escapes from custody, and the obvious failure of several rehabilitative efforts." *Id.* at \*4.  It went on to say: "Even if the sentencing jury had this mitigation evidence before it, we do not believe, in light of the particularly depraved and brutal nature of these crimes, that it would have spared Hodge the death penalty." *Id.* at \*5.

"[A] federal habeas court may not disturb the state court's decision unless its error lies 'beyond any possibility for fairminded disagreement.'" *Shinn v. Cayer*, 592 U.S. 111, 112 (2020) (quoting from *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  The Kentucky Supreme Court did not err in this case.

I would affirm the decision of the district court.