FILED

NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FEB 25 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

DESHAWN LEE CAMPBELL,

       Petitioner - Appellant,

  v.

GENA JONES,

       Appellee.

No. 23-1917

D.C. No.
5:12-cv-06089-BLF

MEMORANDUM[*]

Appeal from the United States District Court
for the Northern District of California
Beth Labson Freeman, District Judge, Presiding

Argued and Submitted January 9, 2026
San Francisco, California

Before: NGUYEN and BENNETT, Circuit Judges, and MATSUMOTO, District
Judge.[**]

A California jury convicted Deshawn Campbell of the second-degree murder

of Jeffrey Fontana, a San Jose police officer. Campbell unsuccessfully sought to set

aside his conviction on direct appeal and in state post-conviction proceedings. He

---

    [*]    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

    [**]    The Honorable Kiyo A. Matsumoto, United States District Judge for
the Eastern District of New York, sitting by designation.

also sought federal habeas relief under 28 U.S.C. § 2254, which the district court denied.

Campbell raises three certified issues on appeal: (1) whether the prosecutor committed misconduct during closing argument by misstating the burden of proof and disparaging Campbell based on his race; (2) whether trial counsel was ineffective for failing to adequately object to the prosecutor's closing argument; and (3) whether the prosecutor allowed material false evidence concerning a witness's plea agreement to go uncorrected, in violation of *Napue v. Illinois*, 360 U.S. 264 (1959).

We have jurisdiction under 28 U.S.C. §§ 1291 and 2253(a), and we affirm.

1.     On October 28, 2001, at 2:16 a.m., San Jose police officer Jeffrey Fontana responded to a disturbance call. Around two hours later, Officer Fontana's body was discovered lying in the street, face up, with a gunshot wound above his right eye and a pool of blood near his head. A .45-caliber shell casing was found at the scene, and a tan Hyundai was parked about fifteen feet from Officer Fontana's body. The Hyundai was registered to Campbell's father. Inside the vehicle, investigators identified Campbell's fingerprints and discovered an ATM card, bill, and receipt bearing his name. A search of Campbell's father's home revealed a .45 caliber bullet which bore distinctive ejection markings and a stamp identical to those on the casing found near Officer Fontana's body.

At the time of the shooting, Campbell had two outstanding arrest warrants and had told a friend that he was facing several years in prison. When the friend urged Campbell to turn himself in, Campbell said he "couldn't handle that. He didn't want to do that."

The evidence the State presented at trial included this evidence, as well as evidence that while evading arrest, Campbell confessed to multiple people that he killed Officer Fontana.[1]

At trial, Campbell testified, and admitted that he took a firearm and drove to the crime scene in his father's Hyundai. But Campbell claimed that another man, Rodney McNary, shot Officer Fontana. In Campbell's telling, he gave McNary the gun, and McNary shot the officer. Campbell testified that McNary then handed Campbell the gun, instructed him to get rid of it, and they both fled the scene. He also testified that before his arrest, he told several people that McNary had killed Officer Fontana.

---

[1] Campbell went to the home of Sebastian Cadena on the night of the shooting. Campbell asked Cadena if he had seen the news or heard anything about him. Cadena said no and invited him inside. Campbell had Cadena use a computer to look up information about the killing of a San Jose police officer. After reading an article, Campbell said, "it was me," "it was me, who did it." Campbell also spoke with Louella Kissoon several days after the shooting. She asked Campbell if he knew he had killed a police officer. He responded, "I know." "I panicked and – you know, I have all these warrants and I just f***ed up." Kissoon's brother, Gerald, asked Campbell if he had done it. Campbell responded: "yeah, yeah." The State played for the jury audio recordings of the police interviews of Sebastian Cadena, Louella Kissoon, and Gerald Kissoon.

The jury found Campbell guilty of: (1) the second-degree murder of Jeffrey Fontana, a peace officer engaged in the performance of his duties, with the personal use of a firearm; and (2) being a felon in possession of a firearm. The court sentenced Campbell to life without parole, consecutive to 25 years to life, consecutive to 40 months (consecutive to other sentences in unrelated felonies).

The California Court of Appeal affirmed the judgment and summarily denied Campbell's habeas and supplemental habeas petitions. The California Supreme Court denied review.

The district court denied habeas relief and declined to issue a certificate of appealability. We granted a certificate of appealability on three issues: (1) whether the prosecutor committed misconduct during closing argument by misstating the burden of proof and disparaging Campbell based on his race; (2) whether trial counsel was ineffective for failing to adequately object to the prosecutor's closing argument; and (3) whether the prosecutor allowed material false evidence concerning a witness's plea agreement to go uncorrected, in violation of *Napue v. Illinois*, 360 U.S. 264 (1959).

2.     We review a district court's denial of habeas relief de novo. *See Lopez v. Thompson*, 202 F.3d 1110, 1116 (9th Cir. 2000) (en banc). Our review is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under AEDPA, a federal court may grant habeas relief on a claim that a state court resolved

on the merits only when the state court's "decision" was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented" in state court, *id.* § 2254(d)(2). A state court decision is contrary to Supreme Court precedent if "the state court arrives at a conclusion opposite to that reached by th[e] Court on a question of law or if the state court decides a case differently than th[e] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

"These standards require federal courts to give the 'benefit of the doubt' to merits decisions issued by the courts of the sovereign States." *Klein v. Martin*, No. 25-51, 2026 WL 189976, at *4 (U.S. Jan. 26, 2026) (per curiam) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). "So in order to obtain federal habeas relief," the Supreme Court has emphasized, "a state prisoner must 'show far more' than 'clear error.'" *Id.* (quoting *Shinn v. Kayer*, 592 U.S. 111, 118 (2020) (per curiam)). "The habeas claimant must instead establish that the state court 'blunder[ed] so badly that every fairminded jurist would disagree' with the

5                                                                 23-1917

decision." *Id.* (alteration in original) (quoting *Mays v. Hines*, 592 U.S. 385, 392 (2021) (per curiam)).

When the last state court to adjudicate a constitutional claim on the merits did not explain its denial, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale." *Wilson v. Sellers*, 584 U.S. 122, 125 (2018). The federal court "should then presume that the unexplained decision adopted the same reasoning." *Id.*

3.      The state court did not unreasonably apply clearly established federal law in determining that the prosecutor committed no misconduct during closing summations at Campbell's trial. A prosecutor's misconduct is constitutional error only when it "so infect[s] the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)); *see also Parker v. Matthews*, 567 U.S. 37, 45 (2012) (per curiam) (explaining that *Darden* constitutes the relevant Supreme Court precedent for a due process claim based on a prosecutor's improper comments in closing argument).

In *Darden*, the prosecutor made "offensive comments" about the defendant during closing argument, saying that he was an "animal" that "shouldn't be out of his cell unless he has a leash on him and a prison guard at the other end of that leash." 477 U.S. at 180 & nn.11–12. The prosecutor also told the jury that he "wish[ed] [the

6                                                      23-1917

defendant] had used [a gun] on himself"; "wish[ed] someone had walked in the back door and blown [the defendant's] head off"; and "wish[ed] that [he] could see [the defendant] sitting here with no face, blown away by a shotgun." *Id.* at 180 n.12. The Supreme Court found that these comments "undoubtedly were improper." *Id.* at 180. But the Court concluded that they did not deprive the defendant of a fair trial because the prosecutor "did not manipulate or misstate the evidence," the trial court properly instructed the jury "that the arguments of counsel were not evidence," and the "heavy" weight of the evidence against the defendant "reduced the likelihood that the jury's decision was influenced by argument." *Id.* at 181–82.

Campbell raised on direct appeal claims that the prosecutor violated his due process rights by misstating the burden of proof and disparaging him based on his race. The California Court of Appeal rejected both contentions. In doing so, the court correctly identified the appropriate standard.

We see no error related to the prosecutor's recitation of the burden of proof. As the California Court of Appeal explained, "[t]he court instructed the jury that the [State] had the entire burden of establishing [Campbell]'s guilt and the prosecutor admitted that he had the burden to prove [Campbell] guilty beyond a reasonable doubt." And the prosecutor acknowledged his burden at several points during closing argument.

Campbell focuses on the prosecutor's comments that Campbell had a "responsibility" to call certain witnesses and bring in evidence available to him. But *Darden* taught us to "place these remarks in context." *Id.* at 179. Here, the prosecutor was responding to Campbell's testimony that he told several people McNary had killed Officer Fontana. The prosecutor explained, "[t]here were many opportunities for [defense] Counsel to try and prove that [Campbell] was telling the truth. . . . He was the one who was privy and knew where these witnesses were. He was the one who knew what he told these witnesses."

These comments appropriately conveyed that, though the State had the burden of proof, the jury could nevertheless consider whether the defense had come forward with evidence to support the contentions Campbell made on the witness stand. Consequently, the prosecutor did not engage in misconduct by arguing that Campbell failed to call logical witnesses that would corroborate his claim that McNary was the shooter. *See United States v. Soulard*, 730 F.2d 1292, 1306 (9th Cir. 1984) ("A prosecutor may properly comment upon the defendant's failure to present exculpatory evidence, so long as it is not phrased to call attention to the defendant's own failure to testify.").

The California Court of Appeal reasonably determined that the prosecutor's comments did not misrepresent the burden of proof and thus were not improper.

Campbell also contends that the prosecutor disparaged him by appealing to

racial prejudice.  During closing argument, the prosecutor asserted that Campbell's defense "consists of fear mongering.  They put up a booking photograph of Rodney McNary, and they play him as the boogeyman.  He's a mean-looking black man, and they're trying to intimidate you with that."  "But when you look at these two men," the prosecutor continued, "[Campbell] and McNary, I suggest to you there's little difference between them."  Then, discussing a letter that Campbell had written, the prosecutor described Campbell as "fairly illiterate."  "[W]hen you go through the letter," the prosecutor told the jury, "you sit there and read it aloud, you laugh or you feel dismayed at . . . I don't know what they call it nowadays.  Ebonics?  I remember about ten years ago they were calling it that.  And some of that stuff . . . is the type of stuff that people in the 'hood just write that way or speak that way."  Defense counsel did not object to these remarks.

The prosecutor's race-based comments undoubtedly were improper.  *See McCleskey v. Kemp*, 481 U.S. 279, 309 n.30 (1987) ("The Constitution prohibits racially biased prosecutorial arguments.").  But to demonstrate a constitutional error, it "is not enough that the prosecutor['s] remarks were undesirable or even universally condemned."  *Darden*, 477 U.S. at 181 (citation omitted).  The extensive and outrageous misconduct that the Supreme Court held insufficient in *Darden* is worse than the prosecutor's comments here.  *See id.* at 179–81 & nn.9–12.  And we agree with the Court of Appeal that "[t]he evidence that [Campbell] was the person who

9                                                                 23-1917

shot Officer Fontana was very strong, notwithstanding [Campbell's] testimony that he was not the shooter." Given the strength of the evidence against Campbell and the trial court's jury instructions,[2] we cannot say that the prosecutor's remarks "so infected the trial with unfairness" as to deny Campbell due process. *Id.* at 181 (quoting *Donnelly*, 416 U.S. at 643).

We conclude that the state court's rejection of Campbell's claims was not contrary to, nor did it involve an unreasonable application of, Supreme Court precedent, including *Darden*.

4.      The state court did not act unreasonably in denying Campbell's ineffective assistance of counsel ("IAC") claims. To evaluate an IAC claim, we apply the standard the Supreme Court announced in *Strickland v. Washington* and ask whether defense counsel's performance was deficient and resulted in prejudice. *See* 466 U.S. 668, 687 (1984). The deficient performance prong requires that the defendant show that his counsel's errors fell so far below the level of competent representation that it was as though he had no counsel at all. *See id.* On the prejudice prong, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. When, as here, "a defendant challenges a conviction, the question is whether

---

[2] The jury was instructed that it must decide what happened based only on the evidence presented and that the attorneys' remarks during closing arguments were not evidence.

there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice," the Supreme Court has instructed, "that course should be followed." *Id.* at 697.

Campbell alleges two separate errors. He contends that his trial counsel was ineffective for failing to request a curative admonition in connection with the prosecutor's burden-shifting comments, to which he did object, and for failing to object to the prosecutor's race-based comments. The California Court of Appeal addressed both substantive contentions on the merits of Campbell's due process claims, finding that the prosecutor did not commit prejudicial misconduct. But the court did not directly discuss Campbell's IAC claims or consider them under the *Strickland* framework.

Because the state court's decision was "unaccompanied by an explanation" specifically resolving Campbell's IAC claims, we must determine what theories "could have supported[] the state court's decision" and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Harrington v. Richter*, 562 U.S. 68, 98, 102 (2011). We agree with the district court that even assuming counsel's performance was deficient, the state court could have reasonably determined that Campbell was not prejudiced by counsel's failure to

object to the race-based comments or seek a curative instruction in connection with the burden-shifting comments.

The prosecutor's comments were not evidence, and, as noted, the jury was so instructed. *See Strickland*, 466 U.S. at 695–96 (distinguishing errors that "had a pervasive effect on the inferences to be drawn from the evidence" and "alter[ed] the entire evidentiary picture" from those that "had an isolated, trivial effect"). Here too we must also consider the weight of the evidence against Campbell. *See id.* at 696 ("[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support."). Campbell insists that this was a "close case" because of the evidence pointing to McNary's guilt. But he does not confront the substantial evidence of his own guilt. The state court had ample basis to think that any real possibility of Campbell being acquitted was eclipsed by the physical and forensic evidence, witness testimony, and his admission that he was present at the shooting and shot Officer Fontana. *See supra* n.1.

Against this backdrop, Campbell has fallen short of demonstrating that the "likelihood of a different result [was] substantial, not just conceivable." *Harrington*, 562 U.S. at 112. Thus, it would not have been unreasonable for the state court to conclude that Campbell did not satisfy *Strickland*'s prejudice standard, especially given the California Court of Appeal's statement as to the strength of the evidence.

5. The state court could have reasonably concluded that the prosecutor did not allow materially false evidence to go uncorrected. "To establish a *Napue* violation, a defendant must show that the prosecution knowingly solicited false testimony or knowingly allowed it 'to go uncorrected when it appear[ed].'" *Glossip v. Oklahoma*, 604 U.S. 226, 246 (2025) (alteration in original) (quoting *Napue*, 360 U.S. at 269). "If the defendant makes that showing, a new trial is warranted so long as the false testimony" was material—"that is, if it 'in any reasonable likelihood [could] have affected the judgment of the jury.'" *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Giglio v. United States*, 405 U.S. 150, 154 (1972)). And "[e]vidence can be material," the Supreme Court has explained, "even if it 'goes only to the credibility of the witness.'" *Id.* at 248 (quoting *Napue*, 360 U.S. at 269).

Campbell's *Napue* claim involves the testimony of Janielle Carter, McNary's girlfriend. Carter faced criminal charges for second-degree robbery. She ultimately pleaded nolo contendere to the charge of being an accessory and, at the time she entered the plea, agreed that her sentencing would be delayed until the conclusion of Campbell's case. The prosecutor in Campbell's trial, Lane Liroff, also was the prosecutor assigned to Carter's case.

At Campbell's trial, Carter denied any knowledge that Liroff was the prosecutor on her criminal case or that her sentencing had been postponed until after

Campbell's trial. She also denied that her cooperation as a witness could affect her sentence. Then, at the close of trial, defense counsel read the following stipulation to the jury: "Janielle Carter was convicted in 2003 to the charge of accessory, a felony. At the time she pled, it was agreed that her sentencing would be delayed until the conclusion of the prosecution against Deshawn Campbell for the murder of San Jose Officer Jeffrey Fontana. Lane Liroff is the prosecutor."

The State concedes that the prosecutor knew Carter's testimony was false, but it urges that the testimony was not material in light of the stipulation. No state court issued a reasoned decision addressing Campbell's *Napue* claim. We presume the claim was adjudicated on the merits, *see Harrington*, 562 U.S. at 98–99, and find that the state court could have reasonably determined that the false testimony was immaterial.

Carter may have helped the State's case, but her testimony was not "the only direct evidence of [Campbell]'s guilt." *Cf. Glossip*, 604 U.S. at 248 ("Because Sneed's testimony was the only direct evidence of Glossip's guilt . . ., the jury's assessment of Sneed's credibility was necessarily determinative here."). Nor was this a case where the jury could "convict [Campbell] only if it believed [Carter]." *See id.* Indeed, Carter did not provide any direct evidence that Campbell killed Officer Fontana. But other physical and testimonial evidence presented by the State, along with Campbell's own admissions, tied him to the shooting. Given this other

evidence, Carter's testimony was not so critical as to "undermine[] confidence in the verdict." *See id.* at 250; *see also Catlin v. Broomfield*, 124 F.4th 702, 743 (9th Cir. 2024) ("[W]hen there is substantial evidence of guilt, false testimony bearing on the credibility of a single witness is less likely to be material."). And the stipulation read to the jury appropriately and sufficiently mitigated any prejudice caused by the false testimony.

For these reasons, the state court could have reasonably concluded that there is no reasonable likelihood that Carter's testimony affected the jury's verdict. Thus, we conclude that the state court's rejection of Campbell's *Napue* claim was not contrary to, nor did it involve an unreasonable application of, Supreme Court precedent. *See* 28 U.S.C. § 2254(d)(1).

6. Campbell contends that the panel should expand the certificate of appealability. But contrary to our Circuit Rules, he did not brief any uncertified issues or otherwise justify expansion beyond directing us to his original motion. *See* Ninth Cir. R. 22-1(e). By failing to adequately develop his argument that we should expand the certificate of appealability, Campbell has forfeited it. *See Iraheta-Martinez v. Garland*, 12 F.4th 942, 959 (9th Cir. 2021) (concluding that a petitioner forfeits an argument not adequately developed in his opening brief).

Campbell's motion to supplement the record, Dkt. No. 15, is granted.

**AFFIRMED.**